SMITH, APPELLANT, *v.* MCBRIDE ET AL.; CLINTON TOWNSHIP,

APPELLEE, ET AL.

[Cite as *Smith v. McBride,* 130 Ohio St.3d 51, 2011-Ohio-4674.]

*The absence of a mutual-aid agreement between two jurisdictions is not determinative of whether a peace officer who leaves his jurisdiction is on an emergency call for purposes of R.C. 2744.01(A) and 2744.02(B)(1)(a).*

(No. 2010-0809—Submitted April 20, 2011, at the Guernsey County Session—

Decided September 20, 2011.)

APPEAL from the Court of Appeals for Franklin County, No. 09AP-571,

2010-Ohio-1222.

_____

SYLLABUS OF THE COURT

The absence of a mutual-aid agreement between two jurisdictions is not determinative of whether a peace officer who leaves his jurisdiction is on an emergency call for purposes of R.C. 2744.01(A) and 2744.02(B)(1)(a).

_____

CUPP, J.

{¶ 1} In this political-subdivision-immunity case, a township police officer was involved in a motor-vehicle accident outside his own jurisdiction while responding to a general dispatch call for assistance from an officer in another jurisdiction. At issue is whether the police officer can be considered to have been on an emergency call at the time of the accident for purposes of R.C. Chapter 2744 when the evidence is insufficient to establish the existence of a mutual-aid agreement between the jurisdictions. We hold that he can, because application of the immunity statutes in this case does not depend on whether a mutual-aid agreement existed. Accordingly, we affirm the judgment of the court of appeals.

## I. Facts and Procedural History

{¶ 2} Late in the evening of March 14, 2006, Clinton Township Police Sergeant Travis Carpenter[1] was at his police headquarters in Clinton Township, an unincorporated area of Franklin County, when he heard a general dispatch call from a Franklin County sheriff's deputy requesting assistance because the deputy was on foot and was pursuing a fleeing suspect. The call originated about two miles from Carpenter's location in what Carpenter knew to be a high-crime area outside of Clinton Township's jurisdiction.

{¶ 3} Carpenter immediately headed to the location in a marked police cruiser. Although Carpenter was speeding, he was not using his siren or emergency lights. Driving east in light traffic on Morse Road, he approached the intersection with Chesford Road. Carpenter had a green light to proceed through the intersection, which is located in the city of Columbus, a third jurisdiction.

{¶ 4} Just prior to Carpenter's entry into the intersection, a vehicle that had been traveling west on Morse Road made a left turn in front of him to go south on Chesford Road. That vehicle was closely followed by a second vehicle, which also attempted to make a left turn onto Chesford Road. The latter vehicle and Carpenter's cruiser collided in the intersection.

{¶ 5} The speed limit on Morse Road at this location was 45 miles per hour. Evidence in the record indicates that Carpenter was traveling about 64 miles per hour at the time.

{¶ 6} Vashawn McBride was the driver of the vehicle that collided with the cruiser, and he was severely injured in the crash. Plaintiff-appellant, Lea

---

1. Carpenter is not an appellee in this appeal, even though all the filings list him as such. As is detailed in this opinion, his personal liability was resolved in his favor in the courts below, and that issue has not been appealed. He therefore cannot be individually liable no matter how this case is resolved.

Smith, a passenger in McBride's vehicle who was asleep at the time of the accident, was also injured.

{¶ 7} Smith filed a personal-injury suit naming as defendants, inter alia, McBride, Carpenter, and Clinton Township,[2] among others. After filing depositions in the case, Carpenter and Clinton Township moved for summary judgment, asserting that they were entitled to immunity under R.C. Chapter 2744. The trial court granted the motion for summary judgment as to both parties, concluding that because Carpenter had a professional obligation to respond to the dispatch, he was on an emergency call for purposes of R.C. 2744.01(A) and 2744.02(B)(1)(a). The trial court also determined that Carpenter had not engaged in willful or wanton misconduct for purposes of R.C. 2744.02(B)(1)(a). Finally, the trial court determined that Carpenter's behavior had not been reckless for purposes of R.C. 2744.03(A)(6).

{¶ 8} The trial court later granted Smith's motion for Civ.R. 54(B) certification, and she took an immediate appeal of the immunity issues.

{¶ 9} In her appeal to the Tenth District Court of Appeals, Smith contended that Clinton Township was not entitled to immunity under R.C. 2744.01(A) and 2744.02(B)(1)(a), because the record did not establish that there was a mutual-aid agreement between Clinton Township and Franklin County. Smith argued that in the absence of such an agreement, Carpenter did not have a professional obligation to respond to the dispatch that ultimately caused him to be at the intersection outside of his jurisdiction where the accident occurred and, thus, summary judgment was improper. Smith also asserted that summary judgment should not have been granted because under R.C. 2744.02(B)(1)(a) and 2744.03(A)(6)(b), Carpenter's operation of his cruiser was reckless and constituted wanton misconduct.

---

2. Smith actually named the Clinton Township Police Department as a defendant, but Clinton Township was later substituted for the Clinton Township Police Department.

**{¶ 10}** The appellate court, in a divided decision, affirmed the trial court's grant of summary judgment in all respects.

**{¶ 11}** We accepted Smith's appeal under our discretionary jurisdiction for review of two propositions of law. 126 Ohio St.3d 1543, 2010-Ohio-3855, 932 N.E.2d 338. The first proposition asserts that absent a mutual-aid agreement or equivalent legislative resolution, a police officer does not have a professional obligation to respond to a call outside his jurisdiction when he is not engaged in hot pursuit and therefore cannot be on an emergency call for purposes of immunity under R.C. Chapter 2744 when responding. The second proposition asserts that such an agreement must be in writing. Because we hold with regard to the first proposition that such an agreement is not necessary, we need not address Smith's second proposition.

## II. Analysis

**{¶ 12}** Summary judgment is appropriate when an examination of all relevant materials filed in the action reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). Our determination whether summary judgment was appropriate is made upon a de novo review. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

### A. R.C. Chapter 2744

**{¶ 13}** In determining whether a political subdivision is immune from tort liability under R.C. Chapter 2744, courts apply a three-tiered analysis. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7; *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 8. The first tier involves the general grant of immunity of R.C. 2744.02(A)(1), which provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the

4

political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 14} Political-subdivision immunity is not absolute, however. The second tier of the analysis focuses on the five exceptions to immunity listed in R.C. 2744.02(B), which can expose the political subdivision to liability. *Colbert* at ¶ 8; *Lambert* at ¶ 9. In cases involving the alleged negligent operation of a motor vehicle by an employee of a political subdivision, the second tier of the analysis includes consideration of whether the specific defenses of R.C. 2744.02(B)(1)(a) through (c) apply to negate the immunity exception of R.C. 2744.02(B)(1). *Colbert* at ¶ 8.

{¶ 15} If any of the exceptions to immunity of R.C. 2744.02(B) do apply, and if no defense in that section applies to negate the liability of the political subdivision under that section, then the third tier of the analysis requires an assessment of whether any defenses in R.C. 2744.03 apply to reinstate immunity. Id. at ¶ 9; *Lambert* at ¶ 9.[3]

### B. R.C. 2744.02(B)(1)(a) and 2744.01(A)

{¶ 16} The statutes central to the resolution of this case are R.C. 2744.02(B)(1)(a) and 2744.01(A). Under R.C. 2744.02(B)(1), a political subdivision is generally liable for injury, death, or loss caused by the negligent operation of a motor vehicle by one of its employees acting in the scope of employment. However, a political subdivision is granted a full defense to this liability by R.C. 2744.02(B)(1)(a) if the employee was "[a] member of [the] municipal corporation police department or any other police agency [and] was operating [the] motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct."

---

3. For an individual employee of a political subdivision, a different analysis applies. See *Lambert,* 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, at ¶ 10; *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17; R.C. 2744.03(A)(6).

{¶ 17} "Emergency call" is defined in R.C. 2744.01(A) as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer."

{¶ 18} R.C. 2744.02(B)(1)(a), therefore, provides a full defense to a political subdivision for motor-vehicle liability when its three conditions are met: (1) the vehicle's operator was a member of the municipal corporation's police department, (2) the officer was responding to an emergency call, and (3) the operation of the vehicle did not constitute willful or wanton misconduct.

{¶ 19} The appeals court affirmed the trial court's finding that Carpenter's operation of his vehicle did not constitute willful or wanton misconduct for purposes of R.C. 2744.02(B)(1)(a). Because Smith has not appealed that aspect of the court of appeals' decision, that matter has been conclusively determined in Clinton Township's favor. In addition, Smith has not appealed from the appellate court's holding that Carpenter did not act in a wanton or reckless manner for purposes of R.C. 2744.03(A)(6)(b). Consequently, Carpenter's personal liability is not at issue before this court.

{¶ 20} The only relevant issue before us, then, is whether Carpenter could have been on an emergency call for purposes of R.C. 2744.02(B)(1)(a) and 2744.01(A) in the absence of a mutual-aid agreement between Clinton Township and Franklin County. Asked another way, was Carpenter's response to the dispatch call for assistance precluded from being an emergency call under the statutes if Carpenter's employing jurisdiction and the jurisdiction where the call originated did not have a mutual-aid agreement that required Carpenter to respond outside his own jurisdiction?

## C. Colbert v. Cleveland

{¶ 21} In *Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶ 1, this court noted that a political subdivision generally will not be liable for

6

damages caused by a police officer's negligent operation of a motor vehicle if the officer was responding to an emergency call when the accident occurred. In that case, we held that an emergency call for R.C. 2744.01(A) purposes need not involve an inherently dangerous situation, and we adopted a broader definition of "emergency call" that turns on whether an officer was acting pursuant to a call to duty at the time of the accident. Id. at ¶ 10-11.

{¶ 22} *Colbert* involved two Cleveland police officers on patrol in the early morning hours who witnessed what they believed was a drug deal in a high-crime area. Id. at ¶ 3. The officers then pursued the suspects' vehicle in their patrol car but did not activate their emergency lights or siren or summon backup. Id. At an intersection, the officer driving the patrol car stopped and looked both ways, but upon entering the intersection, the patrol car was struck by a vehicle driven by an uninvolved third party, who subsequently sued the city of Cleveland for his injuries. Id. at ¶ 4-5.

{¶ 23} In construing the statutory meaning of the phrase "a call to duty" in *Colbert*, we focused on the dictionary definition of "duty" as " 'obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession.' " Id., 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 13, quoting Webster's Third New International Dictionary (1986) 705. We concluded that for purposes of R.C. 2744.01(A), "a 'call to duty' involves a situation to which a response by a peace officer is required by the officer's professional obligation," *Colbert* at ¶ 13, and accordingly held that the inquiry into whether an officer is on an emergency call centers on whether the officer was required to respond by the officer's professional obligation, id. at ¶ 15 and at the syllabus.

{¶ 24} In *Colbert*, we affirmed the grant of summary judgment to the city of Cleveland. We held that the officers involved were responding to a call to duty and, therefore, were responding to an emergency call when the accident occurred.

The city was entitled to immunity under R.C. 2744.02(B)(1)(a) as a matter of law. Id. at ¶ 16.

### D. Mutual-Aid Agreements and R.C. Chapter 2744

{¶ 25} This case has a number of similarities to the situation in *Colbert*. However, Smith asserts, in essence, that *Colbert* is fundamentally distinguishable because the police officers in *Colbert* were acting in their own jurisdiction but in this case, Carpenter was responding to a call in a different jurisdiction. Smith asserts that Carpenter could not have been on an emergency call as a matter of law if there was no mutual-aid agreement between Clinton Township and Franklin County at the time of the accident. Carpenter's professional obligation to respond to the dispatch, Smith argues, was dependent on the existence of such an agreement. Smith further asserts that such an agreement must be in writing to be effective, and asserts that because the record does not affirmatively establish that such an agreement existed, there are genuine issues of material fact that should preclude the granting of summary judgment in the township's favor.

{¶ 26} We agree with Smith that the record is inconclusive as to whether a mutual-aid agreement existed between Clinton Township and Franklin County at the time of the accident. Therefore, we conduct our inquiry on the assumption that no mutual-aid agreement between the relevant jurisdictions existed when the accident occurred.[4]

{¶ 27} In support of her argument that Carpenter's professional obligation to respond to the dispatch was dependent on the existence of a mutual-aid agreement, Smith relies on two main sources—this court's decision in *Sawicki v.*

---

4. The court of appeals in denying Smith's application for reconsideration of its decision determined that even if Carpenter's testimony may have been inconclusive as to whether a mutual-aid agreement existed, Smith had failed to present for the trial court's consideration any probative evidence (such as an affidavit from a law-enforcement official) that a mutual-aid agreement did not exist, beyond an unsupported statement in her brief to that effect, and therefore had failed to create an issue of fact on that point for Civ.R. 56 purposes. Because of the way we resolve this case, we do not need to assess the validity of this part of the appellate court's reasoning.

*Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, and various statutes outside of R.C. Chapter 2744, including those regarding mutual-aid agreements.

{¶ 28} Smith asserts that in *Sawicki*, "this Court emphasized that pursuant to R.C. § 2935.03, 'police officers had no arrest powers, as police officers, when acting outside the boundaries of their political subdivisions.' " Smith's brief, quoting *Sawicki* at 226. Smith further contends that in a footnote in *Sawicki*, this court acknowledged that a mutual-aid agreement may establish extrajurisdictional authority (and duty) to act. In *Sawicki* at 226, fn. 3, we stated:

{¶ 29} "A Mutual Aid Pact is, in essence, an agreement between contiguous municipalities. It requires that, under specified circumstances, one municipality may request and receive aid from an adjoining municipality. It allows a municipality's police officer to respond to an out-of-jurisdiction request for aid, when the request is made by a command officer of the adjoining municipality."

{¶ 30} Smith maintains that in the absence of a mutual-aid agreement, an officer has no duty or professional obligation to respond, and that, quoting *Sawicki*, 37 Ohio St.3d at 227, 525 N.E.2d 468, any " 'officer who respond[s] [will do] so with only the authority and the insurance protection of an ordinary citizen.' "

{¶ 31} *Sawicki* involved claims that the Ottawa Hills Police Department had been negligent for failing to respond to a call from outside of, but very near to, its jurisdiction. Id. at 223-224. The issues involved whether the defendant, Ottawa Hills, owed the plaintiffs, crime victims, a duty to respond to the extrajurisdictional call for assistance and whether the failure to respond proximately caused the injuries. Id. at 225. However, the events in *Sawicki* occurred prior to the 1985 effective date of R.C. Chapter 2744. Id. The *Sawicki* court's analysis and reasoning regarding mutual-aid agreements is based on pre-R.C. Chapter 2744 law and is thus distinguishable from the matters under

consideration in the present case, and we therefore afford it no precedential value in resolving the issues in the present case.

{¶ 32} Smith attempts to buttress her *Sawicki* argument with citations to and discussions of several statutes covering mutual-aid agreements and statutes relating to a police officer's authority to act outside his jurisdiction. As to mutual-aid agreements, Smith relies on R.C. 505.431, which provides:

{¶ 33} "The police department of any township * * * may provide police protection to any county * * * without a contract to provide police protection, upon the approval, by resolution, of the board of township trustees of the township in which the department is located and upon authorization by an officer or employee of the police department providing the police protection who is designated by title of office or position, pursuant to the resolution of the board of township trustees, to give such authorization.

{¶ 34} "Chapter 2744. of the Revised Code, insofar as it applies to the operation of police departments, shall apply to any township police department * * * and to its members when such members are rendering police services pursuant to this section outside the township * * * by which they are employed."

{¶ 35} Clinton Township asserts, however, that a mutual-aid agreement and an officer's obligation to respond to a particular dispatch are two separate, unconnected matters and that the existence of a mutual-aid agreement is irrelevant to the consideration of whether an officer is on an emergency call for R.C. Chapter 2744 purposes. It further argues that because the text of the immunity statutes relevant to this case provides no geographic limitations, those statutes are not concerned with whether an officer was acting outside his jurisdiction. To that end, Clinton Township points out that R.C. 2744.02(A)(2) states that in general, immunity applies even when acts are "performed * * * on behalf of another political subdivision."

**{¶ 36}** There is no indication within R.C. Chapter 2744 that the immunity for an emergency call is conditioned on the existence of a mutual-aid agreement. Smith's reliance on statutes such as R.C. 505.431 is therefore unavailing. Although R.C. 505.431 expressly invokes the application of R.C. Chapter 2744 to the actions of police officers taken outside of their employing township pursuant to that statute, it neither expressly nor implicitly precludes the application of R.C. Chapter 2744 to extrajurisdictional actions taken when a mutual-aid agreement is *not* involved. R.C. 505.431 cannot reasonably be read to limit immunity and impose liability in such situations by its silence when R.C. Chapter 2744, by its own terms, encompasses every emergency call.

**{¶ 37}** Smith also cites R.C. 2935.03, which states that a police officer shall make arrests within his or her jurisdiction for violations of the law (R.C. 2935.03(A)), and which contains an exception for an officer to pursue, arrest, and detain a suspect outside his or her jurisdiction for certain hot-pursuit situations, R.C. 2935.03(D). Smith contends that because it is undisputed that there was no hot pursuit in this case, Carpenter had no authority to exercise arrest powers outside his jurisdiction in the absence of a mutual-aid agreement. And since Carpenter did not have arrest powers, Smith concludes, Carpenter had no authority or duty to respond to the dispatch for help outside his jurisdiction.

**{¶ 38}** Clinton Township acknowledges that there are statutory limits on an officer's authority to act outside his jurisdiction, but it asserts that even when an officer does not have authority to make an arrest, he can still render assistance and therefore can reasonably be acting pursuant to a professional obligation to respond to a call for R.C. Chapter 2744 purposes.

**{¶ 39}** We agree with Clinton Township that a police officer's authority to make an arrest is different from a police officer's professional obligation to respond to a request for assistance and that a responding officer may provide assistance to another law-enforcement officer absent the authority to arrest. For

that reason, Smith's reliance on R.C. 2935.03 to support her claim that Carpenter lacked a professional duty to respond to the dispatch's call for assistance is unavailing.

{¶ 40} The term "emergency call" as defined in R.C. 2744.01(A) and used in R.C. 2744.02(B)(1)(a) does not incorporate any concept of a peace officer's authority to act or lack of authority to act. Rather, those statutes by their clear terms grant immunity to a political subdivision when an officer is responding to a call to duty, which includes responding to a dispatch for assistance out of a professional obligation to do so. We accordingly apply those statutes as written and will not read into the statutes language that does not exist. See *Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶ 15; see also *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 24 (a statute that is clear and unambiguous on its face requires no interpretation).

{¶ 41} Because we must apply statutes that are clear on their face as written, we find no merit in Smith's arguments that public-policy considerations require this court to establish a bright-line rule that political subdivisions do not retain their immunity for their police officer's responses to calls outside their jurisdictions unless the officers are acting pursuant to written mutual-aid agreements or equivalent legislative resolutions and that R.C. Chapter 2744 is inapplicable if such agreements or resolutions do not exist.

{¶ 42} For all the foregoing reasons, we hold that the absence of a mutual-aid agreement between two jurisdictions is not determinative of whether a peace officer who leaves his jurisdiction is on an emergency call for purposes of R.C. 2744.01(A) and 2744.02(B)(1)(a).

{¶ 43} Smith's propositions of law focus on the alleged relationship between mutual-aid agreements and R.C. Chapter 2744. Because we conclude that the absence of a mutual-aid agreement between Clinton Township and

Franklin County does not preclude application of R.C. Chapter 2744 statutory immunity, our holding also resolves this case on its merits.

{¶ 44} The record supports the trial court's ruling that unrebutted evidence establishes that Carpenter's actions were undertaken pursuant to his professional obligation as a police officer[5] and were a legitimate response to a general call for assistance regarding a nearby deputy sheriff on foot pursuing a fleeing suspect after dark in a high-crime area. There was no error in the holdings of the trial and appellate courts that Carpenter was on an emergency call as a matter of law when the accident occurred.

### III. Conclusion

{¶ 45} We hold that the absence of a mutual-aid agreement between two jurisdictions is not determinative of whether a peace officer who leaves his jurisdiction is on an emergency call for purposes of R.C. 2744.01(A) and 2744.02(B)(1)(a). The judgment of the court of appeals affirming the trial court's grant of summary judgment to Clinton Township is therefore affirmed.

Judgment affirmed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

---

5. Carpenter testified at his deposition that he had not activated his emergency lights and siren, because he did not consider himself to be on an emergency run for purposes of the Clinton Township Police Department's rules, regulations, and procedures. The department's internal protocols discourage the use of emergency lights and siren except in certain situations, which include an emergency run responding to an officer-in-trouble call. Carpenter testified that although he responded in order to provide possible aid to the officer on foot who requested assistance, he was not certain the officer was "in trouble." Smith implies that Carpenter's statement that he was not on an emergency run should equate to an admission that he was not on an emergency call for R.C. Chapter 2744 purposes. However, an emergency run pursuant to the police department's protocols and an emergency call for purposes of statutory immunity are different. For purposes of evaluating whether immunity attaches, even when an officer is not on an emergency run, he may still be responding to a call to duty and thus be acting under a professional obligation to respond. See *Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at the syllabus.

_____

**PFEIFER, J., dissenting.**

{¶ 46} A police officer spends a large percentage of his time in his cruiser without sovereign-immunity protection for his employer. When officers are on routine patrol, transporting suspects, or returning to the police station, their "political subdivisions are liable for injury, death, or loss to person or property" caused by the officers' negligent operation of their motor vehicles. R.C. 2744.02(B)(1). The General Assembly has carved out only limited circumstances—emergencies—when political subdivisions enjoy sovereign immunity when their police officers drive negligently. R.C. 2744.02(B)(1)(a). I would hold that Officer Carpenter's well-intentioned foray outside his jurisdiction is included in that broad category of police work that is not contained within the narrow exception to liability. The term "emergency" cannot be used to describe a situation in which a police officer has no actual duty to respond, has no authority to make an arrest, and does not demonstrate to other drivers that he is responding to an emergency, i.e. does not use lights and sirens.

{¶ 47} In this case, this court tells citizens harmed in an accident allegedly caused by the negligent driving of a police officer while outside his jurisdiction that they cannot recover damages from the officer's employer. Yet at the place where the accident occurred, that same officer would have no authority to cite those citizens for so much as a muffler violation and would be under no duty to help them if they were in a dangerous situation. I have long argued that sovereign immunity is unconstitutional. *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 144, 624 N.E.2d 704 (Pfeifer, J., concurring). I have accepted that that is a losing battle. But can we at least agree that the sovereign has no immunity where it is not the sovereign?

_____

Brian G. Miller Co., L.P.A., and Brian G. Miller, for appellant.

Surdyk, Dowd & Turner Co., L.P.A., Jeffrey C. Turner, Boyd W. Gentry, and Joshua R. Schierloh, for appellee.

Murray & Murray Co., L.P.A., Margaret M. Murray, and Michael Stewart, urging reversal for amicus curiae Ohio Association for Justice.

Schroeder, Maundrell, Barbiere & Powers and Jay D. Patton, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.

———————————