[Cite as *State ex rel. Rhodes v. Chillicothe*, 2013-Ohio-1858.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO EX REL. | : | |
| TIMOTHY T. RHODES, | : | |
| | : | Case No. 12CA3333 |
| Relator-Appellant, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE CITY OF CHILLICOTHE, et al., | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| Defendants-Appellees. | : | RELEASED 05/03/2013 |

## APPEARANCES:

William E. Walker, Jr., Massillon, Ohio, for Relator-Appellant.

Kevin A. Lantz, Miamisburg, Ohio, for Respondents-Appellees.

Hoover, J.

I

INTRODUCTION

{¶ 1} In this public records mandamus and forfeiture case, the appellant Timothy T. Rhodes contends that the appellee city of Chillicothe wrongfully withheld or disposed of digital images relating to the city's traffic photo enforcement program. The trial court determined that the digital images at issue, the so-called "rejected images," were not in fact "records" as defined under R.C. 149.011(G). The court below further found that appellant was not an "aggrieved" party, and thus, was not entitled to civil forfeiture under R.C. 149.351(B)(2).

{¶ 2}    Appellant further contends that the trial court committed error by denying his Motion to Compel.  The trial court determined that the motion did not comply with the mandates of Civ.R. 37(E), because appellant did not first attempt to resolve the dispute, or at the very least, failed to document his attempts to resolve the dispute with the city.  Moreover, the trial court noted that the motion was filed nearly three weeks after the imposed discovery deadline.

{¶3}    For the reasons that follow, we affirm in part and reverse in part and remand for proceedings consistent with this opinion.

{¶ 4}    Appellant raises the following three assignments of error for review.

First Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT DENIED APPELLANT'S MOTION TO COMPEL AND DID NOT ORDER RESPONDENTS TO PROVIDE A KNOWLEDGEABLE AND INFORMED CIV. R. 30(B)(5) DESIGNEE WHO COULD TESTIFY AT DEPOSITION UPON MATTERS THAT HAD BEEN NOTICED WITH REASONABLE PARTICULARITY.

Second Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT FOUND THAT THE TRAFFIC-PHOTO ENFORCEMENT IMAGES WERE NOT RECORDS SUBJECT TO DISCLOSURE UNDER THE PUBLIC RECORDS ACT – EVEN THOUGH THOSE IMAGES DOCUMENTED THE

CITY'S OPERATIONS AND DECISIONS FOR NOT ISSUING CITATIONS

TO CERTAIN MOTORISTS.

Third Assignment of Error:

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT

FOUND THAT APPELLANT COULD NOT BRING A MANDAMUS ACTION

TO GAIN ACCESS TO RECORDS BECAUSE APPELLANT WANTED

THOSE RECORDS FOR SOMEONE ELSE.

II

FACTS

{¶ 5} Between the fall of 2008 and fall of 2009, the city of Chillicothe utilized a traffic photo

enforcement program ("Program"). The Program used cameras placed at various intersections

throughout the city to record digital still and video images of possible violations of local speed

and red light ordinances. The cameras were placed and maintained by Redflex Traffic Systems,

Inc. ("Redflex"), a business headquartered in Arizona, pursuant to an agreement with

Chillicothe. All images and video captured by the cameras were stored on Redflex computer

servers, which were not located in the city.

{¶ 6} Under its agreement with the city, Redflex preprocessed the captured images and made

an initial determination as to whether any of the images revealed a potential violation. If the

image did not show a potential violation, the image was rejected and Redflex did not forward it

to the Chillicothe Police Department for further review. If Redflex determined that the image

showed a potential violation, Redflex would forward the image to the police department for

possible issuance of citation. The Chillicothe Police Department would then conduct its own review of the image. If the police department determined that the forwarded image showed no violation, the image was rejected. If on the other hand, the police department confirmed a violation, a citation was issued.

{¶7} Images rejected by Redflex or by the Chillicothe Police Department are known as "rejected images." If a citation was issued, the image was an "approved image."

{¶8} On or about June 15, 2011, appellant sent a public records request to the former Mayor of Chillicothe, Joseph P. Sulzer. The Mayor's Office received the request on or about June 20, 2011. The request sought "access to each contract and written agreement the City has entered into with vendors of cameras used in the traffic photo enforcement program" and "access to each photograph and video image captured by the cameras used in conjunction with" the Program. Attorney R. Paul Cushion, II from Cleveland hired appellant as an independent contractor to make the public records request upon appellee. Pursuant to his agreement with Mr. Cushion, appellant would receive $4,000.00 upon successful retrieval of the requested documents. Appellant never articulated any other reason as to why he sought the traffic images.

{¶9} Former Mayor Sulzer responded by letter dated June 21, 2011. The former Mayor advised appellant that he could inspect the written contract and agreement with Redflex during regular business hours. Former Mayor Sulzer further responded that the city did not have possession of the digital images and that Redflex "maintained proprietary ownership of these images." The Mayor suggested that appellant contact Redflex directly. Eight days later, on June 29, 2011, appellant filed his Verified Complaint.

{¶ 10} Appellant's Verified Complaint raised two claims against the city of Chillicothe and former Mayor Sulzer.[1] His first claim sought a writ of mandamus pursuant to R.C. 149.43, to compel appellees to provide the requested digital images or appear and show cause why such access should not be ordered. His second claim was for civil forfeiture pursuant to R.C. 149.351(B)(2).

{¶ 11} In July 2011, the city, through its former Law Director, requested that Redflex provide it with copies of the requested images. Several months later, in early December 2011, the city finally received copies of the digital images. On or about December 9, 2011, the city informed appellant's counsel that the images were available for inspection. In early November 2011, however, appellant amended his request and sought copies of the images rather than mere access to the images. In response to the city's invitation to inspect the images, appellant, who resided 180 miles from Chillicothe, reiterated his desire to obtain copies of the images. Appellant supplied the city with a portable hard drive onto which the images could be copied; and appellant received the images, contract, and written agreements on or about January 26, 2012.

{¶ 12} It is undisputed that appellant received the "accepted images." Appellant contends, however, that the city has not provided copies of the "rejected images."

{¶ 13} On or about March 28, 2012, appellant served a Civ.R. 30(B)(5) Notice of Deposition upon the city. The city selected one of its police officers, Peter Shaw, as its representative. Officer Shaw was at times, the police department's Program Manager in charge of the photo traffic enforcement program. On April 3, 2012, appellant deposed Officer Shaw in Chillicothe. Dissatisfied with the testimony and preparation of Officer Shaw, appellant filed a Motion to

---

[1] The trial court substituted Mayor Jack A. Everson in place of former Mayor Joseph P. Sulzer by Order entered on or about March 19, 2012.

Compel and Memorandum in Support on April 24, 2012, seeking an order that the city provide a

new Civ. R. 30(B)(5) representative for appellant to depose.  It is notable that the trial court had

imposed an April 5, 2012, discovery deadline.

{¶ 14} On April 25, 2012, appellees and appellant each moved for summary judgment.  The

parties filed timely briefs in opposition on May 2, 2012 and May 3, 2012.

{¶ 15} On May 21, 2012, the trial court issued a Final Judgment Entry granting appellees'

Motion for Summary Judgment, denying appellant's Motion for Summary Judgment, and

denying appellant's Motion to Compel.[2]  This appeal followed.

### III

### THE DISCOVERY DISPUTE

{¶ 16} For his first assignment of error, appellant contends that the trial court erred when it

denied his Motion to Compel.  Specifically, appellant contends that despite giving advance

notice of the areas of inquiry, the city's Civ.R. 30(B)(5) designee, Officer Shaw, was unprepared

to testify at his deposition.  For the reasons that follow, we find that the trial court did not err

when it denied appellant's Motion to Compel.

### A

### STANDARD OF REVIEW

---

[2] The judgment entry also denied appellant's Motion for Order Directed to Non-Party to Show Cause and for Imposition of Sanctions and Motion to Extend Discovery Deadlines and the Dispositive Motion Due Date.  Appellant has not assigned error to the trial court's denial of this motion.

{¶ 17} A trial court maintains broad discretion in regulating the discovery process. *Slusher v. Ohio Valley Propane Servs.*, 177 Ohio App.3d 852, 2008-Ohio-41, 896 N.E.2d 715, ¶ 33 (4th Dist.). Accordingly, the standard of review on a trial court's decision in a discovery matter is whether the court abused its discretion. *Id.* A trial court abuses its discretion if its decision is unreasonable, arbitrary, or unconscionable. *Entingh v. Old Man's Cave Chalets, Inc.*, 4th Dist. No. 08CA14, 2009-Ohio-2242, ¶ 13.

B

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

{¶ 18} Generally, a party may obtain discovery regarding any unprivileged matter concerning the pending litigation. Civ.R. 26(B)(1). One method of obtaining discoverable matter is a deposition pursuant to Civ.R. 30. Where the deponent is a public or private corporation, partnership, or association, it must designate one or more of its employees, officers, agents, or other authorized persons to testify on its behalf. Civ.R. 30(B)(5). The designated person must testify to matters known or available to the organization. *Id.*

{¶ 19} If a deponent fails to answer a question propounded in deposition, or gives an incomplete or evasive answer, the discovering party may move for an order compelling an answer. Civ.R. 37(A)(2) - (3). Before moving to compel, however, said rule requires that the movant first "make a reasonable effort to resolve the matter through discussion with the attorney *** or person from whom discovery is sought." Civ.R. 37(E). The party's motion must also be accompanied by a statement reciting what efforts were made to resolve the dispute. *Id.*

{¶ 20} In this case, nothing in the record reveals that appellant made a reasonable effort to resolve the matter. In addition, nothing in the record reveals that the appellant made a statement

in his motion reciting his efforts to resolve the matter. The trial court noted this failure, stating that in addition to filing the motion beyond the discovery deadline, appellant also "did not comply with Civ.R.37(E). Civ. R. 37(E) requires that he make 'a reasonable effort to resolve the matter through discussion' and to accompany his Motion with 'a statement reciting the efforts made to resolve the matter in accordance with this section.'" [Final Judgment Entry, p. 9.]

{¶ 21} This court has previously held that:

> Appellant's failure to state that reasonable efforts were made leads to two possible scenarios, both of which are fatal to appellant's claim on appeal. The first scenario is that appellant expended no reasonable efforts to resolve the dispute. In the absence of such efforts, the trial court properly denied appellant's motion to compel. On the other hand, even if appellant simply failed to document such efforts, the trial court still did not abuse its discretion by denying the motion to compel. In either situation, we hold the trial court's decision was not arbitrary, unreasonable or unconscionable. (Citations omitted.) *Crosby v. Rose*, 4th Dist. No. 97CA594, 1998 WL 51603, *6 (Feb. 11, 1998).

{¶ 22} Moreover, appellant's Motion to Compel was untimely. Rule 37 motions filed after a discovery deadline are tardy. *Steele v. Mara Ents., Inc.*, 10th Dist. No. 09AP-102, 2009-Ohio-5716, ¶ 33. Here, the trial court by a January 17, 2012 Order, set a discovery deadline of April 5, 2012. Despite notice of the deadline, appellant waited until April 3, 2012, to depose Officer Shaw. Appellant did not even file his Motion to Compel until April 24, 2012, nineteen days past the discovery deadline.

{¶ 23} Considering the tardiness of appellant's motion and appellant's failure to make any resolution attempts, or alternatively, to document resolution attempts, this court cannot conclude that the trial court abused its discretion by denying appellant's Motion to Compel.  The ruling was not unreasonable, arbitrary, or unconscionable.  Accordingly, appellant's first assignment of error is overruled.

IV

THE SUMMARY JUDGMENT DISPOSITION

{¶ 24} Appellant's remaining assignments of error pertain to the disposition of his claims by summary judgment.

A

STANDARD OF REVIEW

{¶ 25} We review the trial court's decision on a motion for summary judgment de novo.  *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12.  Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.  *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶ 26} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party.  Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128

Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15, quoting *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9.  In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor.  *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 535, 629 N.E.2d 402 (1994).

{¶ 27} The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).  To meet this burden, the moving party must be able to specifically point to the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims.  *Id*.; Civ.R.56(C).  If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.  *Bohl v. Travelers Ins. Group*, 4th Dist. No. 03CA68, 2005-Ohio-963, ¶ 17.  However, if the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in [Civ.R. 56], must set forth specific facts showing that there is a genuine issue for trial."  Civ.R. 56(E); *Grimes* at ¶ 15.

B

THE "REJECTED IMAGES" WHICH THE CHILLICOTHE POLICE DEPARTMENT

REVIEWED ARE PUBLIC RECORDS

{¶ 28} For his second assignment of error, appellant contends that the trial court erred when it found that the "rejected images" were not records subject to disclosure under the Ohio Public

Records Act ("Act"). The trial court relied on this determination in granting summary judgment in favor of appellees. Appellant specifically contends that the rejected images documented the appellee's operations and decisions for not issuing citations to certain motorists, and thus are records as defined under the Act. For the reasons that follow, we agree that the images which were forwarded by Redflex to the city to review are records subject to disclosure. However, the images which were not forwarded to the city to review are not records subject to disclosure.

{¶ 29} Appellant filed mandamus[3] and civil forfeiture[4] claims. In his Motion for Summary Judgment and accompanying affidavit, appellant acknowledged that he received "accepted images" from appellees, but stated that he did not receive the "rejected images." The "rejected images" need to be separated into images that were forwarded to the city of Chillicothe to review (hereinafter "forwarded rejected images") and images that were not forwarded to the city of Chillicothe to review (hereinafter "non-forwarded rejected images").

{¶ 30} A "public record" is any record that is kept by any public office. R.C. 149.43(A)(1). The Act defines a "record" as "any document * * * including an electronic record * * * created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). Not every document that a public office creates, receives, or which comes under its jurisdiction is a record:

---

[3] If a requesting party "allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person," the requester may file a mandamus action against the responsible public office or person. R.C. 149.43(C)(1).
[4] Any person who is aggrieved by the improper disposition of a record may file a civil action to recover forfeiture. R.C. 149.351(B)(2).

A contrary conclusion would lead to the absurd result that any document received by a public office and retained by that office would be subject to R.C. 149.43 regardless of whether the public office ever used it to perform a public function. The plain language of R.C. 149.011(G), which requires more than mere receipt and possession of a document in order for it to be a record for purposes of R.C. 149.43, prohibits this result. (Citation omitted.) *State ex rel. Beacon Journal Publishing Co. v. Whitmore*, 83 Ohio St.3d 61, 64, 697 N.E.2d 640 (1998).

{¶ 31} The *Whitmore* court further stated that a record does not include "any piece of paper received by a public office that *might* be used by that office." (Emphasis sic.) *Id.* Rather, a "record" includes "'anything a government unit utilizes to carry out its duties and responsibilities * * *.'" *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990), quoting *State ex rel. Jacobs v. Prudhoff*, 30 Ohio App.3d 89, 92, 506 N.E.2d 927 (9th Dist.1986).

{¶ 32} In *Whitmore*, the Supreme Court of Ohio concluded that letters sent from members of the public to a trial judge in an effort to influence her sentencing decision were not public records subject to disclosure. The Court noted that because the judge "never utilized the letters in her sentencing decision * * * [they were] not subject to disclosure because they do not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of Judge Whitmore's office." *Whitmore* at 63. The Court continued, "we reject relators' contention that a document is a 'record' under R.C. 149.011(G) if the public office '*could* use' the document to carry out its duties and responsibilities." (Emphasis sic.) *Id.*

{¶ 33} Appellant argues that the city used the "rejected images" in its decision making process – i.e., in determining whether to issue a citation for a potential traffic violation. Appellees counter,

arguing that while the "rejected images" could have been used to support a violation, they were in fact, not utilized, and thus are not records as defined by the Act.

{¶ 34} The record reflects that Redflex preprocessed the images; and the images which clearly showed no violation were rejected and never sent to the city. Images that showed a potential violation were forwarded to the Chillicothe Police Department for review. The police department rejected some of the forwarded images and did not use them to issue a citation. The "non-forwarded rejected images" were not used by the city or Police Department to perform agency business; rather, the images only might have or could have been used for such purpose. Accordingly, we hold that the "non-forwarded rejected images" are not records, and therefore, are not subject to the Act.

{¶ 35} The trial court did not err in granting summary judgment in favor of appellees with respect to the "non-forwarded rejected images." To find otherwise would directly contradict the statutory language and existing precedent.

{¶ 36} On the other hand, some of the "rejected images" were forwarded by Redflex to the city of Chillicothe. The Chillicothe Police Department utilized some of the images in order to issue citations and rejected other images. The "forwarded rejected images" were used by the city in performing a governmental function and in making decisions regarding whether a citation would be issued. These "forwarded rejected images" are records subject to disclosure under the Act.

{¶ 37} The trial court erred in granting summary judgment in favor of appellees with respect to the "forwarded rejected images."

C

APELLANT IS NOT AN "AGGRIEVED" PARTY

{¶ 38} For his third assignment of error, appellant contends that the trial court erred to his prejudice when it found that he could not bring a mandamus action to gain access to records because appellant wanted those records for someone else.  The trial court, however, made no such ruling.  Rather, the trial court granted summary judgment in favor of appellees on appellant's mandamus action, because it found that the city fully complied with appellant's records request.  Appellant appears to have confused that determination with the trial court's finding that his *civil forfeiture claim* was barred because of his purely pecuniary interest.

{¶ 39} Under the Act, public offices are required to make public records available in response to a request from any person.  R.C. 149.43(B)(1) provides:

> Upon request * * * all public records responsive to the request shall be promptly
>
> prepared and made available for inspection to any person at all reasonable times
>
> during regular business hours * * * [and/or] upon request, a public office * * *
>
> shall make copies of the requested public record available at cost and within a
>
> reasonable period of time.

If the requesting party "allegedly is aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person," the requester may file a mandamus action against the responsible public office or person.  R.C. 149.43(C)(1).

{¶ 40} The court below noted that appellant's mandamus action raised two issues: (1) whether the city promptly prepared the requested records; and (2) whether the records were made available for inspection (in accordance with the June 15, 2011 request) or by copying (in accordance with the November 7, 2011 amended request) within a reasonable period of time. Ultimately, the trial court concluded that "[i]n view of Respondents' required reliance upon Redflex to produce the numerous images and the additional delay caused by the Realtor's November 2011 request, the Court finds Respondents produced the requested records within a reasonable period of time." [Final Judgment Entry, p. 5.] Thus, appellant's mandamus claim hinged on the adequacy and timeliness of the city's response and had nothing to do with the reasons behind his request. Nowhere in the analysis of the mandamus claim does the trial court discuss appellant's agreement with Attorney Cushion, or appellant's apparent pecuniary interest in recovering the records.

{¶ 41} Appellant's second claim sought civil forfeiture for improper disposition of records. The Act establishes that records may only be disposed of in accordance with the rules adopted by the city's records commission. R.C. 149.351(A). The former version of the statute, in effect at the time this suit was filed, provided that "[a]ny person who is aggrieved by the * * * [improper disposition] of a record *** may commence" an action for injunctive relief and/or a "civil action to recover a forfeiture in the amount of one thousand dollars for each violation, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action." Fmr. R.C. 149.351(B)(1) - (2).[5]

---

[5] R.C. 149.351 was amended, effective September 29, 2011. The amendments now limit the forfeiture penalty to a cumulative total of $10,000.00, regardless of the number of violations, and place limitations on the recovery of attorney's fees. R.C. 149.351(B)(2).

{¶ 42} The Supreme Court of Ohio, in a case in which this appellant was an actual litigant, construed the statute and determined that in order to be "aggrieved," a requester's legal rights must be adversely affected or infringed by the public office's improper disposition of records. *Rhodes v. City of New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782,¶ 18. Finding that the Act was designed to allow the state's citizens an avenue to examine government decisions, the court stated that forfeiture is "available only to a person who made a request with the goal of accessing the public records. If the goal is to seek a forfeiture, then the requester is not aggrieved." *Id*. at ¶ 19, 24.

{¶ 43} While noting that a public office is required to honor a public records request by "any person" under R.C. 149.43(B); the *New Philadelphia* court expressly rejected the notion that "any person" could recover forfeiture under R.C. 149.351. *Id*. at ¶ 20, 23. "We cannot ignore the General Assembly's use of the term 'aggrieved,' and we conclude that the General Assembly did not intend to impose forfeiture when it can be proved that the requester's legal rights were not infringed, because the requester's only intent was to prove the nonexistence of the records." *Id*. at 23.

{¶ 44} Appellees established through competent credible evidence that appellant did not have an interest in accessing the records (i.e. to monitor the City's enforcement of its traffic ordinances); instead his interest was pecuniary. Appellant testified as to his contract with attorney Cushion, which would award him a hefty payday upon the retrieval of the records. Appellant further stated that he did not know why Mr. Cushion wanted the images. Appellant simply sought payment, either under his contract with Mr. Cushion, or in the form of forfeiture. Accordingly, it

was not error for the trial court to determine that appellant was not "aggrieved," and thus not entitled to forfeiture.[6]

{¶45}  Appellant's mandamus action survives summary judgment since the appellees did not comply with appellant's request with respect to providing the "forwarded rejected images"; however, appellant is not an "aggrieved party"; and therefore he is not entitled to forfeiture. Appellant's third assignment of error is overruled.

V

CONCLUSION

{¶ 46} This Court affirms the judgment of the trial court as to appellant's first and third assignments of error.  We hold that the "non-forwarded rejected images," which were not used by the city to enforce its traffic and speed policies, are not "records" subject to the Ohio Public Records Act.  We also follow the precedent established by the Supreme Court of Ohio, *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, and find that appellant was not an aggrieved party where his interest in the images was purely pecuniary; and thus he is not entitled to civil forfeiture damages.

{¶ 47} This Court does find merit in appellant's second assignment of error with respect to the "forwarded rejected images" being subject to disclosure under the Act; therefore, the trial court did err when it granted summary judgment in favor of appellees with respect to the mandamus claim.  Accordingly, this cause shall be remanded for proceedings consistent with this opinion.

---

[6] In order to recover forfeiture the following must be met: (1) the requesting party must request public records; (2) the public office must be obligated to honor the request; (3) the office must have disposed of the records in violation of R.C. 149.351(A); and (4) the requesting party must be aggrieved by the improper disposition. *New Philadelphia* at ¶ 16.

JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for proceedings consistent with this decision.  Appellant and Appellees shall split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Harsha, J.:  Concur in Judgment and Opinion.


For the Court

By:_____
            Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing wit