[Cite as *Bell v. Cleveland*, 2013-Ohio-2093.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98933**

## MARTEZ BELL

PLAINTIFF-APPELLEE

vs.

## CITY OF CLEVELAND

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-765643

**BEFORE:** S. Gallagher, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 23, 2013

**ATTORNEYS FOR APPELLANT**

Barbara A. Langhenry
Director of Law

By: Jerome A. Payne, Jr.
Assistant Director of Law
City of Cleveland
601 Lakeside Avenue, Suite 106
Cleveland, OH   44114


**ATTORNEY FOR APPELLEE**

Robert R. Lucarelli
Robert R. Lucarelli Co., L.P.A.
526 Superior Avenue, #505
Cleveland, OH   44114

SEAN C. GALLAGHER, J.:

{¶1}  Defendant-appellant city of Cleveland ("the City") appeals the decision of the Cuyahoga County Court of Common Pleas that denied its motion for summary judgment against plaintiff-appellee Martez Bell ("Bell").  Upon our review of the record, we reverse the decision of the trial court and find that the City is entitled to immunity.

{¶2} On November 17, 2007, Bell attended a dance at the Kinsman Party Center, located at 93rd Street and Kinsman Road in Cleveland.  Bell estimated that there were no more than 200 people in the party center.  Around 11:00 p.m., everyone was required to leave the party center because a fight broke out.  Once outside, Bell observed several police cars with their lights flashing.  Bell proceeded to walk across the street to a Shell gas station with a friend.  Bell testified during his deposition that he observed multiple fights occurring outside the party center and that the police were trying to break up the fights.  However, in his affidavit, Bell indicated that there was no fighting going on by the time he left the party center.  He also stated in his affidavit that he went to a nearby McDonald's restaurant to make a phone call before going to the gas station and that there was no fighting going on at these locations.

{¶3} Bell also stated in his affidavit that two police cars without flashing lights or sirens pulled up at the gas station.  An officer stopped Bell, began questioning him, and told him to go home.  Bell stated that as the officer pulled away, again without lights or sirens, the police car ran over Bell's left foot.  As a result of the accident, Bell sustained

a left-foot sprain.  Bell's friend, Dauesean Wirt, provided an affidavit attesting to the same events.

{¶4} Officer Wade Westerfield stated in his deposition that he received either a broadcast for assistance or "other officers gone for assistance" for a fight.  The fight was so large that two additional police districts were called to assist.  Upon arriving at the party center, Officer Westerfield saw an ongoing fight, with mainly all juveniles, that was occurring at the party center, in the parking lot, in the street, at the gas station, and at the McDonald's restaurant.  He estimated there were "150, 200 plus" people.  He indicated that there were other police officers at the scene and he assumed "every available car and our night shift [were] there at the time[,]" which would have been at least eight police cars with sirens and lights flashing.

{¶5} Officer Westerfield stated that he had his lights and sirens on as he moved his vehicle through the crowd.  He headed to the gas station because there were officers "chasing some kids and some were over there fighting or trying to break up fights over at that gas station area."  There were officers "on foot breaking up people pretty much everywhere."  Officer Westerfield stated that he pulled into the gas station, and as he jumped out of his vehicle to assist, someone yelled "you're on his foot."  The officer then got back in his car and backed it up.  He then checked on the individual and told him to wait while the officer called EMS.  Officer Westerfield stated that when he looked back, the individual had taken off running toward McDonald's with a bunch of kids.  Officer

Westerfield stated that the fight was ongoing and he actually heard shots fired down the street after the juveniles ran in the direction of the McDonald's.

**{¶6}** On September 30, 2011, Bell filed a complaint for negligence against the City. He alleges his injuries were caused by a City employee's negligent and careless operation of a motor vehicle in the course and scope of employment. The City filed a motion for summary judgment, claiming it is entitled to immunity pursuant to the "emergency call" defense afforded under R.C. 2744.02(B)(1)(a). The trial court denied the motion on August 13, 2012. The court found that there are facts in dispute surrounding the incident and that the issue of "whether the officer was on an emergency call or responding to a call to duty" requires jury interpretation. The City timely filed this appeal.

**{¶7}** The City's sole assignment of error is that the trial court erred in denying summary judgment because there is no genuine issue of material fact as to "whether or not [the officer] was responding to a call to duty when the accident occurred."

**{¶8}** Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.). Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that

(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

*State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶9}** There is no dispute that the City qualifies as a political subdivision for purposes of establishing immunity under R.C. 2744.02(A)(1). That immunity may be negated under R.C. 2744.02(B)(1), which provides that "* * * political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." However, an exception exists under R.C. 2744.02(B)(1)(a) when "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct."

**{¶10}** In this matter, Bell concedes that the officer's actions did not amount to willful or wanton misconduct. The central issue is whether the officer was responding to an emergency call.

**{¶11}** An "emergency call" is defined under R.C. 2744.01(A) as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an

immediate response on the part of a peace officer." The Ohio Supreme Court has held that an "emergency call" under R.C. 2744.01(A) is not limited to "those calls to duty that concern inherently dangerous situations." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 11. Instead, "an 'emergency call' * * * involves a situation to which a response by a peace officer is required by the officer's professional obligation." *Id*. at ¶ 15. The inquiry "turns on whether an officer was acting pursuant to a call to duty at the time of the accident." *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 21.

{¶12} "[R.C. 2744.01(A) and R.C. 2744.02(B)(1)(a)] by their clear terms grant immunity to a political subdivision when an officer is responding to a call to duty, which includes responding to a dispatch for assistance out of a professional obligation to do so." *Id*. at ¶ 40. The issue of whether an officer is on an "emergency call" may be determined as a matter of law when there are no triable questions of fact present. *Rutledge v. O'Toole*, 8th Dist. No. 84843, 2005-Ohio-1010, ¶ 19; *Howe v. Henry Cty. Commrs*., 167 Ohio App.3d 865, 2006-Ohio-3893, 857 N.E.2d 664, ¶ 13 (3d Dist.).

{¶13} The evidence in this case establishes that the officer was acting pursuant to his professional obligation as a police officer. Officer Westerfield was responding to a general call for assistance with regard to the situation at the party center. This was a situation that required a response by Officer Westerfield pursuant to his professional obligation. Indeed, it appeared that every available police car on duty, which was at least eight, responded to the scene. The record reflects that there were approximately 200

individuals at the party center, multiple fights broke out, and the police were attempting to get the very large crowd and fights under control.

{¶14} While Bell provided a self-serving affidavit that stated no fighting was going on when he left the party center, he testified during his deposition that multiple fights were occurring and several police cars were present with sirens and lights flashing when he exited the party center. Officer Westerfield indicated that the fights had moved to the parking lot, the street, the gas station, and the McDonald's. Officers were actively engaged in breaking up the fights "everywhere." During his response to the emergency call, Officer Westerfield drove over to the gas station to assist other officers control the situation and disperse the individuals. It was at this point that he encountered Bell, whose foot was run over by the officer's vehicle.

{¶15} While Bell claims there are factual disputes as to whether the emergency situation had dissipated at the time he was injured, these disputes are not material to the determination. There is no question that the officer was fulfilling his professional duty and was assisting his fellow officers in controlling the situation and dispersing the juveniles when the accident occurred. Further, even if the accident occurred as Officer Westerfield was pulling out, he was still acting pursuant to a call to duty.

{¶16} In *Longley v. Thailing*, 8th Dist. No. 91661, 2009-Ohio-1252, the court applied immunity with regard to an accident that occurred as an officer re-entered a traffic lane after he stopped to investigate a vehicle in the berm of a roadway. The court recognized that the on-duty officer had a professional obligation to investigate the vehicle

stopped in the berm of the roadway. The court further refused to limit the definition of an "emergency call" temporally and found that the officer's professional obligation required him to not only stop but also to continue on his way. *Id*. at ¶ 24. Thus, even if we accept Bell's claim that his foot was run over as the officer was leaving, we are bound by the prior precedent in *Longley*.

{¶17} We also note that this case is distinguishable from *Spain v. Bentleyville*, 8th Dist. No. 92378, 2009-Ohio-3898, where the court found that a police officer who operates a motor vehicle in the performance of routine police patrol duties is not responding to an "emergency call." In *Spain*, a police vehicle struck a person walking on the road. The officer testified that he was on basic patrol duty, his attention had been diverted, and his vehicle went left of center. *Id.* at ¶ 9. Thus, there was no "call to duty," and the court declined to construe the term "emergency call" to include the performance of basic patrol duties. *Id*. at ¶ 12.

{¶18} The record herein reflects that Officer Westerfield was acting pursuant to an "emergency call" and fulfilling his professional obligation when the accident occurred. Therefore, sovereign immunity protection is warranted as a matter of law.

{¶19} Accordingly, we find the trial court erred by denying the City summary judgment and that the City is entitled to immunity. The first assignment of error is sustained. Upon remand, the trial court shall enter judgment for the City.

{¶20} Judgment reversed; cause remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY;
MARY J. BOYLE, P.J., DISSENTS (WITH SEPARATE OPINION)

MARY J. BOYLE, P.J., DISSENTING:

{¶21} Respectfully, I dissent.

{¶22} I find that genuine issues of material fact exist as to whether Officer Westerfield was responding to a call of duty. The facts surrounding Officer Westerfield's presence at the scene of the accident are disputed. The resolution of these facts is necessary to determine whether the City is entitled to the defense contained in R.C. 2744.02(B)(1)(a) to reinstate immunity. And since Civ.R. 56(C) requires us to construe "the evidence most strongly in favor of the nonmoving party," the conflicting evidence presented precludes the granting of summary judgment in this case. Thus, I would overrule the City's single assignment of error and affirm the trial court's decision.