[Cite as *Weinkauf v. Pena*, 2020-Ohio-3293.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Cecelia R. Weinkauf, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-707 |
| v. | : | (C.P.C. No. 18CV-7962) |
| Michael Pena et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 11, 2020

**On brief:** *Paxton Law Office* and *Robert C. Paxton, II,* for appellant.

**On brief:** *Raymond H. Decker, Jr.,* for appellees.

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Michael and Dulceia Pena invited their next-door neighbor Cecelia Weinkauf into their home for a party to celebrate the christening of their friends' two-year-old son. Upon entering the house, Ms. Weinkauf found her hostess and four other women grouped around a rug that would not lie flat: the rug was curled up at the edge and "looked like [it] had just come off a roll." Weinkauf Deposition at 67. Ms. Weinkauf knew the rug would not lie flat "[b]ecause they were talking about it" and discussing what might be done. *Id.* at 66. Some three hours later, the 79-year-old Ms. Weinkauf initiated a game of "catch" with the young guest of honor, *id.* at 62; in her pursuit of the running boy, she tripped over the rug and, she says, sustained serious injuries to her hips and knee, *id.* at 75. So she sued the Penas.

{¶ 2} Litigation proceeded until the trial court granted the Penas' motion for summary judgment because their legal duty to their social guest Ms. Weinkauf extended no farther than to refrain from acting outside the bounds of ordinary care and to warn her of any dangerous condition that was not obvious and of which she was not aware. *See* September 17, 2019 Decision Granting Motion of Defendants for Summary Judgment. Ms. Weikauf appeals from that decision, but having reviewed the record afresh, we are obliged to affirm the trial court's judgment given well established Ohio law and Ms. Weinkauf's own testimony.

{¶ 3} Appellate review of a summary judgment decision is "de novo, governed by the standard set forth in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 8. A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the party's pleadings, but * * * must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E). Thus, under the rule, "[s]ummary judgment is appropriate when an examination of all relevant materials filed in the action reveals that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, ¶ 12, quoting Civ.R. 56. When applying the de novo standard, "the court of appeals independently reviews the record and affords no deference to the trial court's decision." *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6, citing *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9.

{¶ 4} Here, like the trial court, we draw upon the facts as Ms. Weinkauf described them. On a late Saturday afternoon in October 2016, she walked next door to the party. Weinkauf Deposition at 40. When she arrived, she saw Mrs. Pena and "maybe four" other women "gathered around the rug * * * because it wasn't lying flat. The rug wasn't lying flat." *Id.* at 65. "[T]hey were talking about" the problem. *Id.* at 66. Ms. Weinkauf had "never [seen] the rug before" and believed that it had been "purchased specifically" or rented for the party; "it looked like the rug had just come off a roll." *Id.* at 65, 67. She joined in the discussion as to what might be done: "I told them it's not going to lie flat, you got to put a chair over it, but I never saw a chair before." *Id.* at 66-67. "I felt that they were going to take

care of it, this problem, and I forgot about it," she later testified.  *Id.* at 67.  "[I]t isn't something I would store in my memory bank if they were – it appeared that they were going to solve the problem, turn the rug or do something, but * * *."  *Id.* at 67; *see also* subsequent Weinkauf Affidavit at ¶ 11 ("at one point in the discussion over the rug at the start of the evening, it was suggested that the Defendant turn the rug so the dangerous fringe end of the rug would not be in the path of party traffic.  The Defendant [Ms. Pena] declined the idea because she did not like the way the rug looked placed any other way.").

{¶ 5}    Ms. Weinkauf enjoyed herself at the party for three hours or so, Weinkauf Deposition at 62, 67, and then found herself in the living room where the "baptism child" was "playing with a toy or something," *id.* at 62.  "I said, 'Oh, I'm going to catch you,' so I thought I'm going to do this little catch thing."  *Id.* at 62-63.  Thus encouraged, the boy "started running and I followed him [from the living room, through the foyer, into the kitchen, and from there] into the family room area where my foot went under the rug and I fell."  *Id.* at 62-63; Weinkauf Affidavit at ¶ 9 and Affidavit Exhibit A (map).  Ms. Weinkauf later told the trial court that her "attention was directed at the child and so she did not observe the floor below his feet."  Weinkauf Affidavit at ¶ 10.

{¶ 6}    Ms. Weinkauf filed suit against the Penas almost two years later, alleging one count of negligence.  The complaint alleged that the Penas had "negligently placed" the carpet with "lipped-up edges" in their home, creating a "dangerous condition" for guests; that the placement of the carpet "gave no warning [of] the danger"; and that Ms. Weinkauf had "sustain[ed] serious personal injuries" as a result of the Penas' negligence.  Septempber 20, 2018 Complaint at ¶ 4-6.

{¶ 7}    The Penas' lawyer took Ms. Weinkauf's deposition on April 25, 2019 and filed their motion for summary judgment two months later.  After full briefing, the trial court granted it on September 17, 2019.  Noting that Ms. Weinkauf "had actual knowledge of the [state of the] rug," the trial court ruled that this knowledge "negated any breach of duty" the Penas otherwise might have had to warn her of the rug's condition.  September 17, 2019 Decision at 4.  Further, the trial court found that even if Ms. Weinkauf had not had actual knowledge that the rug was curled up and would not lie flat, the Penas would not have had a duty to warn her of the danger because "the curled-rug hazard was open and obvious as a matter of law."  *Id.* at 7.  With regard to this alternative mode of analysis, the fact that

Ms. Weinkauf was chasing a two-year-old child when she fell was not an attendant circumstance that defeated the open-and-obvious doctrine, in the trial court's estimation: the "activity of playing chase could not constitute an attendant circumstance, as the game of chase was *her* activity," not a circumstance created by the Penas. *Id.* at 8. The trial court rejected a further alternative theory, declining to apply a "two-inch rule" as urged by the Penas that "provides that a difference in elevation of two inches or less in height between two adjoining portions of sidewalk or walkway is considered insubstantial as a matter of law"; the record lacked any evidence of the height of the rug, the judge observed. *Id.* at 9.

{¶ 8}   Ms. Weinkauf on appeal asserts one assignment of error: "The trial court erred as a matter of law in granting summary judgment to Appellee where an issue of fact existed for the determination by the trier of fact." Amended Brief of Appellant at 5. But what she really advocates is a change in the negligence standard for social hosts.

{¶ 9}   Ms. Weinkauf's negligence claim required her to prove that the Penas owed her a duty of care and breached that duty, thereby proximately causing her injury. *See, e.g.*, *A.M. v. Miami Univ.*, 10th Dist. No. 17AP-156, 2017-Ohio-8586, ¶ 32 ("To prevail on her negligence claim, appellant must prove (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach.") (citations omitted). "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989).

{¶ 10} All agree that Ms. Weinkauf was a social guest of the Penas. As the trial court noted, the Supreme Court of Ohio has defined the duty owed a social guest by a defendant-host:

> A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any *condition* of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, *if the host has reason to believe that the guest does not know and will not discover such dangerous condition.*

*Scheibel v. Lipton*, 156 Ohio St. 308 (1951), paragraph three of the syllabus (emphasis added); *see also Ochall v. McNamer*, 10th Dist. No. 15AP-772, 2016-Ohio-8493, ¶ 71 (applying *Scheibel*'s definition of a host's duty to a social guest).

{¶ 11} Indisputably, Ms. Weinkauf learned (that is, in the terms of *Scheibel*, she *discovered* and *knew*) as soon as she entered the Penas' house that the rug on their family room floor was curled up at the edge. She saw it; she heard others talking about it; and she discussed it herself. Weinkauf Deposition at 65-67. She thought that the problem might be "solve[d]" by turning the rug, until Ms. Pena "declined the idea because she did not like the way the rug looked placed any other way." *Compare id.* at 67 *with* Weinkauf Affidavit at ¶ 11. In sum, she knew that "[t]he rug wasn't lying flat." Weinkauf Deposition at 65. But when she got the young boy to run, and chased him, her "attention was directed at the child and so she did not observe the floor below his feet." Weinkauf Affidavit at ¶ 10. She "forgot about" the condition of the rug. Weinkauf Deposition at 67. But, as the trial court understood, "[g]enerally, the plaintiff's failure to avoid a known peril is not excused by the fact that he [or she] 'did not think,' or 'forgot'." *Raflo v. Losantiville Country Club*, 34 Ohio St.2d 1, 3 (1973); Decision Granting Motion at 5 (quoting *St. Germain v. Newell*, 3d Dist. No. 9-15-14, 2015-Ohio-3713, ¶ 25, quoting *Raflo*).

{¶ 12} The thrust of Ms. Weinkauf's appeal is that the duty Ohio imposes on hosts to warn their social guests of dangerous conditions of which "the guest does not know and [that the guest] will not discover," *Scheibel* at paragraph three of syllabus, is far too lenient, and that constraints on social gatherings in one's home should be significantly tighter. Her position, repeatedly expressed, is that the Penas "had a duty to repair the hazard." Appellant's Brief at 18; *see also id.* at 2 (Penas "knew of the danger created by the rug, yet never did anything about it"); 4 ("failed to remedy the dangerous condition"); *id.* (Penas had time during the party "to remove, or fix, the dangerous rug, but did neither, thereby breaching the duty of care owed" Ms. Weinkauf); Reply Brief at 7 ("They could have fixed the problem," but did not). Thus, in her view: "This case presents a simple issue. If Appellees knew there was a hazardous condition in their home, do they have a duty to fix or secure the hazardous condition in question?" Appellant's Brief at 10. She eventually submits that the answer to that question of law is "yes." *Id.* at 14 ("[o]f course" there is a "duty to correct"). Yet she cannot cite, or at least she does not cite, any authority whatsoever

for that "duty to fix" proposition in this context.  We will not here upend decades of well established Ohio law to reorder the social relationships between families, friends, and neighbors.

{¶ 13} Nor could we, even were we so inclined.  As we have recognized, *see, e.g., Frame v. Allen*, 10th Dist. No. 01AP-698, 2001 Ohio App. Lexis 5971, *7, the Supreme Court of Ohio in *Scheibel* further underscored that:  "A host is not an insurer of the safety of a guest while upon the premises of the host and there is no implied warranty on the part of the host that the premises to which a guest is invited by him are in safe condition."  156 Ohio St. 308 at paragraph two of the syllabus.

{¶ 14} Instead of providing any legal authority for the standard she urges, Ms. Weinkauf quotes at length (for some three and a half single-spaced pages, to be precise) from a common pleas court case called *Porter v. Hyatt Corp.*, Franklin C.P. No. 10CVC-11522, 2013 Ohio Misc. Lexis 16387 (Apr. 25, 2013)—a business invitee case that discussed when a hazard is so "open and obvious" that no warning need be given even in the absence of other foreknowledge.  Appellant's Brief at 10-14.  That case in no way alters the definition of the duty that hosts owe their social guests, nor does it otherwise create liability for a hazardous condition already known by the social guest.  And Ms. Weinkauf's reliance on the decision is especially puzzling in light of her stated view that "[t]he open and obvious doctrine * * * has nothing to do with [her] case."  *See* Reply Brief at 7.  We think that view, at any rate, is correct to the extent that whether or not knowledge of the rug's condition should be *attributed* to Ms. Weinkauf on account of open and obvious features is beside the point, because she herself acknowledged her *direct* understanding from her observations and her conversation with her hostess and others that the rug "wasn't lying flat."  *Compare* Weinkauf Deposition at 65 *with Mullens v. Binsky*, 130 Ohio App.3d 64, 69 (10th Dist.1998) ("rationale behind" open and obvious rule is that such a "danger itself serves as a warning and the owner may reasonably expect that individuals entering the premises will discover [it] and take appropriate measures to protect themselves").

{¶ 15} Ms. Weinkauf's preference for a "duty to repair" standard notwithstanding, "[t]here is no duty on the part of the host to reconstruct or improve the premises for the purpose of making his house more convenient or more safe for those accepting his hospitality, gratuitously extended"; the duty is as described by our state's Supreme Court

in the ruling quoted above.  *Scheibel*, 156 Ohio St. at 315; *see also Narrell v. Long*, 8th Dist. No. 58217, 1990 Ohio App. Lexis 1918, *2 (May 17, 1990) (citing *Scheibel*, noting that a "host does not insure his guest's safety" and "has no duty to improve his house to make it safer for guests").  Ms. Weinkauf, who became advised of the condition of the rug immediately upon entering the party, did not point to evidence tending to show a breach of duty by the hosts whose hospitality she accepted.

{¶ 16} Her few remaining arguments to us do not overcome that missing but necessary element of her case.  Thus, for example, while not quite blaming the newly christened boy, she invokes what she says the Penas' motion conceded as "the distraction of Appellant by the two-year-old child at the time of Appellant's fall and injuries."  Appellant's Brief at 4.  Our review of the Penas' motion does not reveal that they ever made such an admission. *See* June 25, 2019 Defendant's Motion for Summary Judgment with Memorandum in Support.  Much more fundamentally, while attendant circumstances in some instances can "act as an exception that allows a plaintiff to avoid the open and obvious doctrine," *Cummin v. Image Mart, Inc.*, 10th Dist. No. 03AP-1284, 2004-Ohio-2840, ¶ 8, citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494 (1st Dist.1996), Ms. Weinkauf's chasing of the boy was not an attendant circumstance that could trump her actual knowledge here.  An attendant circumstance by definition is one "beyond the control of the injured party." *Cummin* at ¶ 8, citing *Backus v. Giant Eagle*, 115 Ohio App.3d 155, 158 (7th Dist.1996).  We take Ms. Weinkauf's decision to initiate the game of "catch" when she encountered the boy playing with a toy and set him off running, and her decision then to pursue him around the house, to have been within her control. *See* Weinkauf Deposition at 62-63.  She points to no law or evidence undercutting the trial court's conclusion that her "activity of playing chase could not constitute an attendant circumstance, as the game of chase was *her* activity."  Decision Granting Motion at 8 (citations omitted).

{¶ 17} Nor is Ms. Weinkauf served by the implications (not further explored) in her lawyer's argument that the Penas "knew that there would be elderly people at this party. They knew drinking would be involved." Appellant's Brief at 16.  From whatever he implies here (and while Ms. Weinkauf testified that she was 79 years old at the time, she was clear that she does not drink heavily and had consumed no more than one glass of wine at the most, *see* Weinkauf Deposition at 68), counsel leaps to his asserted point that a "tortfeasor

is required to take an injured part[y] 'as they find them,' " Appellant's Brief at 16 (which on reply he phrases in terms of "the 'eggshell skull' rule," Reply Brief at 6).  But the "eggshell skull" rule does not alter the legally defined duty of a host to a social guest.  Rather, it is a rule of damages that "evolved in the context of preexisting injuries to provide that if a defendant's wrongful act causes injury, the defendant is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a plaintiff without a preexisting condition or injuries." *Daniels v. Northcoast Anesthesia Providers, Inc.*, 8th Dist. No. 105125, 2018-Ohio-3562, ¶ 42.  As Ms. Weinkauf's own briefing indicates, the rule would come into play, if at all, only after legal wrongdoing and the existence of a "tortfeasor" had been ascertained.  On this record, at least, it does not relate to the threshold question of whether the Penas breached their duty to Ms. Weinkauf.

{¶ **18**} Ms. Weinkauf's final argument suggests that the trial court leaned too heavily on *Raflo*, which she finds distinguishable on her way to arguing again that the Penas "had a duty to repair the hazard."  Appellant's Brief at 17-18.  We find only one mention of *Raflo* in the trial court's decision, which notes it as a citation in the *St. Germain* case from the Third District Court of Appeals (a case Ms. Weinkauf does not address).  *See* Decision Granting Motion at 5.  As noted in paragraph 11 above, however, we do find *Raflo* relevant here.  The case held:  "One who enters a building by traversing a step described as 'abnormally high,' is charged with knowledge of the presence of that abnormality upon exiting."  34 Ohio St.2d 1 at paragraph two of the syllabus.  The plaintiff there attended a wedding and a luncheon at a country club that she had to enter from a high step that violated the building code.  When she left the festivities about three hours later, she opened a door, stepped down, and fell.  *Id.* at 3.  Given the general rule that "the plaintiff's failure to avoid a known peril is not excused by the fact that he 'did not think,' or 'forgot,' " neither that time span (very comparable to the duration of the party here) nor the circumstances of the wedding reception (as opposed to a neighborly christening party here) were "such as to * * * raise a jury question."  *Id.* at 3.  We are of the same view.  And while Ms. Weinkauf argues that her knowledge of the curled rug was obviated by a "reasonable assumption" that it "would be taken care of," Appellant's Brief at 18, the Penas owed her no duty to repair it.  *Scheibel* at 315.  Incidentally, we note again, with the trial court, *see* Decision Granting

Motion at 5, that Ms. Weinkauf knew that rug would not be turned with the curled end out of party traffic because Ms. Pena did not want the rug "placed any other way."  Weinkauf Affidavit at ¶ 11.

{¶ **19**} Because the Penas had no legal obligation to "remove[] the rug * * * * [or] place[] bricks or other weight-bearing objects to keep the rug flat," for example, *compare* Reply Brief at 5 (not speculating as to whether a guest would have sued had she tripped over a brick), and because Ms. Weinkauf knew the condition of the rug and indeed discussed it with her hostess and others, Ms. Weinkauf's negligence claim failed as a matter of law.  We overrule Ms. Weinkauf's only assignment of error, and we affirm the trial court's grant of summary judgment to the Penas.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____